IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DRAKE M. NOHARA, | CIV. NO. 20-00553 JMS-RT |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 44 |
| v. | |
| LOUIE DEJOY, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 44

## I.  INTRODUCTION

Before the court is a Motion, ECF No. 44, by Defendant Postmaster

General, Louie DeJoy and Defendant United States Postal Service ("USPS"),

seeking summary judgment on all claims asserted by USPS employee Drake

Nohara ("Plaintiff" or "Nohara") in his Complaint, ECF No. 1.[1]  Plaintiff alleges

---

[1]  Although DeJoy and the United States Postal Service are the appropriate named Defendants in the Complaint, *see McDermott v. Pritzker*, 651 F. App'x 590, 592 (9th Cir. 2016) ("[T]he only appropriate defendant in a Title VII action brought by a federal employee is the head of the department or agency in his or her official capacity."), Plaintiff alleges that two particular USPS employees—Bonnie Tomooka, Plaintiff's first level supervisor and Daniel Hirai, Plaintiff's second level supervisor— violated his Title VII rights.  ECF No. 1 at PageID.4. For ease of reference, Tomooka and Hirai are referred to collectively as the "Defendants" in this Order.

that he experienced seven discrete acts of retaliation for participating in protected

Equal Employment Opportunity ("EEO") activity, in violation of Title VII of the

Civil Rights Act of 1964, and that these acts further resulted in a hostile work

environment.  *Id*. at PageID.3–4.  For the reasons provided below, the court

GRANTS the Motion as to five of the alleged discrete acts and the hostile work

environment claim and DENIES the Motion as to two of the alleged discrete acts.

## II.  **BACKGROUND**

### A.    **Factual Background**

Plaintiff alleges that Defendants retaliated against him for engaging in

protected activity in violation of Title VII.  *See* ECF No. 1.  Specifically, Plaintiff

alleges the following seven discrete acts of retaliation:

(1) on December 27, 2016, Tomooka issued Nohara a Letter of Warning;

(2) on December 30, 2016, Hirai revoked Nohara's Enterprise Physical

Access Control System ("ePACS") local administrator access;

(3) on January 2, 2017, Hirai required Nohara to return his work phone;

(4) on February 1, 2017, Tomooka revoked Nohara's access to Microsoft

Visio and Office;

(5) on March 13, 2017, Tomooka issued Nohara a Letter of Instruction;

(6) on July 19, 2017, Tomooka denied Nohara's request to attend an

operations training course; and

(7) on July 25, 2017, Tomooka denied Nohara's request to attend an Electronic Workhour Estimator Program ("eWHEP") staffing training course. ECF No. 1 at PageID.3–4.

Plaintiff has been a USPS employee since July 20, 1996.  ECF No. 50-6 at PageID.471.  Prior to December 2016, Plaintiff had not received any disciplinary actions.  *Id.*  Plaintiff claims that he experienced each alleged act of retaliation for engaging in protected EEO activity.

Specifically, Plaintiff alleges that Defendants retaliated against him in acts 1, 2, 3, and 4 because of his "affiliation with [a USPS] employee, Keith Arakaki, who had filed an EEO complaint" against both Tomooka and Hirai on August 6, 2014.  ECF No. 50-6 at PageID.471; ECF No. 45-6 at PageID.191. Plaintiff also alleges that Defendants retaliated against him in acts 5, 6, and 7, for filing his own EEO complaint on March 3, 2017.  ECF No. 1 at PageID.3–4.  In that EEO complaint, Plaintiff also claimed retaliation for his affiliation with Arakaki.  ECF No. 45-6 at PageID.191 (stating, in Plaintiff's EEO Investigative Affidavit, "Retaliation for affiliation with complainant [Arakaki] with prior EEO activity.  EEO Case 1F-968-0004-14, dated 8/6/2014").

Arakaki and former USPS employee, Roslyn Hanchett, provide supporting evidence for Nohara's allegations.  *See* ECF No. 50-2; ECF No. 50-3. Similarly situated, Arakaki, Hanchett, and Nohara were all USPS Maintenance

Managers who, at some point, reported to Tomooka and Hirai.  ECF No. 50-2 at

PageID.386; ECF No. 50-3 at PageID.412; ECF No. 50-6 at PageID.471.

**B.     Procedural Background**

On December 14, 2020, Plaintiff filed his Complaint.  ECF No. 1.  On

March 14, 2023, Defendants filed their Motion for Summary Judgment.  ECF No.

44.  On April 24, 2023, Plaintiff filed an Opposition to Defendant's Motion.  ECF

No. 48.  And on May 1, 2023, Defendants filed their Reply.  ECF No. 53.  A

Concise Statement of Facts ("CSF") and Exhibits accompanied the Motion and

Opposition.  ECF Nos. 45, 50.  The court held a hearing on May 15, 2023.  ECF

No. 57.

## III.  <u>STANDARD OF REVIEW</u>

The purpose of summary judgment is to identify and dispose of

factually unsupported claims and defenses.  *See Celotex Corp. v. Catrett,* 477 U.S.

317, 323–24 (1986).  Summary judgment is proper when there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient

evidentiary basis on which a reasonable fact finder could find for the nonmoving

party, and a dispute is 'material' only if it could affect the outcome of the suit

under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted). The court views the facts and draws reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. <u>DISCUSSION</u>

Plaintiff alleges that he experienced seven discrete acts of retaliation for participating in protected EEO activity, and that these acts further resulted in a hostile work environment. ECF No. 1 at PageID.3–4. After setting forth the relevant law, the court analyzes each claim below.[2]

### A.    Title VII Retaliation Law Applicable to Federal Employees

Title VII includes different governing provisions for the private and federal sectors. For the federal sector, including the USPS, Title VII requires that

---

[2] Although Defendants spend considerable time in their brief claiming that there is a lack of evidence that they discriminated against Plaintiff based on a protected class such as gender or race, *see, e.g.*, ECF No. 44-1 at PageID.135–39, during the May 15, 2023 hearing, Plaintiff clarified that the Complaint raises only retaliation and hostile work environment—not discrimination—claims. As a result, this Order only addresses the retaliation and hostile work environment claims raised in Plaintiff's Complaint.

"all personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Personnel actions in the federal employment context "include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews."  *Babb v. Wilkie*, 140 S. Ct. 1168, 1172–73 (2020).  And while the private sector provision contains a specific prohibition against retaliation, §2000e-3(a), the federal sector provision does not.  Nevertheless, the Ninth Circuit previously held that the retaliation provision in § 2000e-3 is "equally applicable to action by the federal government."  *White v. Gen. Srvs. Admin.*, 652 F.2d 913, 917 (9th Cir. 1981); *see also Ayon v. Sampson*, 547 F.2d 446, 450 (9th Cir. 1976).

More recently, the Supreme Court has clarified that the Age Discrimination in Employment Act ("ADEA") federal sector provision—which has identical language to Title VII's federal sector provision—by itself prohibits retaliation.  *See Gomez-Perez v. Potter*, 553 U.S. 474, 488 (2008).[3]  And because *Gomez-Perez* applies equally to Title VII, § 2000e-16(a), like the ADEA, contains its own retaliation provision.  *See Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir.

---

[3]  The ADEA federal-sector provision was patterned "directly after" Title VII's federal-sector discrimination ban.  *Gomez-Perez*, 553 U.S. at 487 (quoting *Lehman v. Nakshian*, 453 U.S. 156, 167, n.15 (1981)).

2022).[4]  The court further determines that it can borrow from § 2000e-3(a) to determine the contours and scope of § 2000e-16's anti-retaliation provision.  *See White*, 652 F.2d at 917; *see also Komis v. Sec. of U.S. Dep't of Labor*, 918 F.3d 289, 295 (3d Cir. 2019) (stating that "parity between private-sector and federal-sector retaliation claims" ensures compliance with § 2000e-16(a)'s purpose to protect federal employees from discrimination).

### 1.    *Retaliation—Prima Facie Case*

To make a prima facie showing of retaliation, Plaintiff must demonstrate that (1) he engaged in a protected activity, (2) Defendants took an adverse action against him, and (3) there was a causal link between his involvement in the protected activity and the adverse action undertaken by Defendants.  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).

---

[4]  Although not relevant to the court's ultimate conclusions in this Order, whether § 2000e-16(a) contains its own retaliation provision or incorporates § 2000e-3(a)'s retaliation provision may be relevant to the causation standard that applies to federal sector cases.  Under the private sector provision, a plaintiff must show "but-for" causation."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).  But *Babb*—analyzing the identical ADEA federal sector provision—held that to prove ADEA liability it is sufficient for a federal sector plaintiff to show that age discrimination "plays any part" in the employment decision.  Because the ADEA and Title VII federal sector provisions contain identical language, *Babb* applies equally to Title VII cases.  *See Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021); *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022).  Thus, in the context of Title VII retaliation in the federal sector, to prove liability a plaintiff must show that retaliation "plays any part" in the adverse personnel action.  Here, in applying the *McDonnell Douglas* framework, whether applying a "but-for" test or a "plays any part" test, the court's ultimate outcome would not change.

With respect to the first element—and borrowing from § 2000e-3(a) to help define the contours and scope of a § 2000e-16(a) retaliation claim—an employee has engaged in a "protected activity" if "he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e–3(a); *see also Thomas v. City of Beaverton,* 379 F.3d 802, 811 (9th Cir. 2004).[5]

Under the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and quotation marks omitted).  In applying this test, "the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Id*. at 69.  These two prongs of the *Burlington* standard—the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position—work to "screen out trivial

---

[5]  In construing other civil rights statutes, the Supreme Court has determined that a prohibition on racial discrimination covers third-party, in addition to first-party, retaliation—that is, it covers those who advocate the rights of others protected by the discrimination prohibition. *See Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229 (1969) (applying rule as to a claim under 42 U.S.C. § 1982); *Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167 (2005) (applying rule to a claim under Title IX); *Gomez-Perez*, 553 U.S. at 482 (discussing cases).

conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id*. at 69–70.

As noted above, for liability purposes, the third element centers on whether retaliation played any part in the adverse action.[6]  And temporal proximity may support a finding of causation.  "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'"  *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (quoting *Yarzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).  This "causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time."  *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).  And "[c]ausation sufficient to establish a prima facie case of unlawful retaliation may be inferred from [such] proximity in time."  *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731 (9th Cir. 1986).

### 2.    *Retaliatory Hostile Work Environment—Prima Facie Case*

The Ninth Circuit recognizes that acts of retaliation may form the basis of a hostile work environment claim.  *See Ray*, 217 F.3d at 1245

---

[6]  Although the "plays any part" test applies to liability, a plaintiff seeking "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision" must show that retaliation was a "but-for cause of the adverse personnel action."  *See Babb*, 140 S. Ct. at 1178; *see also Barnes v. Saul*, 840 F. App'x 943, 946 (9th Cir. 2020).

("Harassment is obviously actionable when based on race and gender.  Harassment as retaliation for engaging in protected activity should be no different—it is the paradigm of 'adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'") (quoting EEOC Compliance Manual ¶ 8008).  And other courts have directly held that "Title VII prohibits the creation of a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro*, 995 F.3d at 835.

To establish a prima facie case of hostile work environment based on retaliation, a plaintiff

> must be able to show that, because of [her protected activity], she was subjected to unwelcome conduct that was "sufficiently severe or pervasive" to alter the conditions of [her] employment and create an abusive working environment.  The work environment must be both subjectively and objectively perceived as abusive.

*Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1016–17 (9th Cir. 2018) (some brackets in original) (internal quotation marks and citation omitted).[7]

---

[7]  The "severe and pervasive" standard controls in the Ninth Circuit.  *See Ray*, 217 F.3d at 1245.  The Eleventh Circuit, however, has "clarified that retaliatory hostile work environment claims are properly analyzed under the standard articulated by the Supreme Court in *Burlington* [that the underlying conduct was 'materially adverse' and could dissuade a 'reasonable worker' from engaging in protected activity], rather than the more stringent 'severe or pervasive' standard." *Tonkyro*, 995 F.3d at 833.  Here, the court follows *Ray*.

Although hostile work environment claims often involve numerous

underlying acts of harassment that occur over time, a single incident of harassment

> "can support a claim of hostile work environment
> because the frequency of the discriminatory conduct is
> only one factor in the analysis" . . . [B]ut for a single
> incident to suffice, it "must be extremely severe." When
> severity is questionable, "it is more appropriate to leave
> the assessment to the fact-finder than for the court to
> decide the case on summary judgment."

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (internal

citations omitted).

### 3.    McDonnell Douglas *Framework*

Title VII retaliation claims are evaluated under the burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[8]

Under the *McDonnell Douglas* framework, a plaintiff employee must first establish

a prima facie claim of retaliation.  To do so, the plaintiff must offer evidence as to

each element of the prima facie case.  And a "plaintiff's failure to offer evidence

---

[8]  The *McDonnell Douglas* burden-shifting framework lends plaintiffs a favorable
presumption in retaliation cases, which are typically grounded in circumstantial evidence of
retaliatory motivations.  *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993)
(describing the presumption).  Of course, plaintiffs need not rely on that presumption if they can
produce direct evidence of retaliation.  *See Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir.
2002) ("Absent direct evidence of discrimination, a Title VII plaintiff may prove his case
through circumstantial evidence, following the burden-shifting framework established in
*McDonnell Douglas* . . . .").  Here, however, Plaintiff produces no direct evidence of retaliatory
motive and both parties rely on the *McDonnell Douglas* framework.

establishing a necessary element of his prima facie case will ordinarily be fatal to his claim." *Lyons v. England,* 307 F.3d 1092, 1113 (9th Cir. 2002).

The degree of proof necessary to establish a prima facie case on a motion for summary judgment is "minimal" or "very little" and "does not even need to rise to the level of a preponderance of the evidence." *See Chuang v. Univ. of Cal. Davis Bd. of Trs.,* 225 F.3d 1115, 1124 (9th Cir. 2000). By establishing this relatively low threshold, the courts did not intend to render the standard devoid of meaning or substance. Instead, "the burden at this stage is structured to prevent imposing onerous or burdensome requirements which would disqualify plaintiffs from bringing claims even where defendants could not forward legitimate reasons for their actions." *Sherrell v. Winter*, 2007 WL 61058, at *4 (D. Haw. Jan. 8, 2007).

After the plaintiff employee establishes a prima facie showing, the burden of production shifts to the defendant employer to forward a legitimate—which is to say non-retaliatory—reason for its actions. *McDonnell Douglas Corp.,* 411 U.S. at 802. This requirement does not shift the burden to prove retaliatory intent. The "ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affs. v. Burdine,* 450 U.S. 248, 253 (1981).

Once the defendant has forwarded a legitimate, non-retaliatory rationale for its actions, the burden shifts back to the plaintiff to provide evidence sufficient to raise a genuine issue of material fact as to whether the non-retaliatory rational set forth by a defendant is a pretext. *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1282 (9th Cir. 2000); *see also Merrick v. Hilton Worldwide, Inc*., 867 F.3d 1139, 1147 (9th Cir. 2017). At this stage, the plaintiff needs to do more than merely deny the credibility of the defendant's proffered reason. *See Schuler v. Chronicle Broad. Co.,* 793 F.2d 1010, 1011 (9th Cir. 1986). Moreover, the plaintiff's "subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact." *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996).

The plaintiff can make a showing of pretext sufficient to survive summary judgment in one of two ways. First, the plaintiff can offer evidence to show that "a [retaliatory] reason more likely motivated the employer" when she took the disputed action. *Texas Dep't of Cmty. Affairs,* 450 U.S. at 256. Second, the plaintiff can show that the defendant's proffered explanation for its decision is "unworthy of credence," biased, or otherwise not reliable. *Lindahl v. Air France,*

930 F.2d 1434, 1437 (9th Cir. 1991).  The plaintiff can make either showing through direct or circumstantial evidence.[9]  *See Chuang,* 225 F.3d at 1124.

## B.    Application

Plaintiff alleges that Defendants engaged in a total of seven discrete retaliatory acts.  ECF No. 1 at PageID.3–4.  Four of those acts occurred prior to March 3, 2017, the date Plaintiff filed his first EEO complaint.  The last three acts occurred after March 3, 2017, that is, after Plaintiff had filed this EEO complaint.  The court addresses the acts that fall within these two time periods separately.

### 1.    *Acts 1, 2, 3, and 4*

Nohara claims that Defendants undertook acts 1, 2, 3, and 4—all of which occurred between December 2016 and February 2017—in retaliation for his "affiliation with" Keith Arakaki, who filed an EEO complaint against Defendants.  ECF No. 50-6 at PageID.471; ECF No. 45-6 at PageID.191; *see also* ECF No. 50 at PageID.372–73 (Plaintiff's CSF ¶¶ 15–20 (stating that Defendants engaged in certain acts "in retaliation for Plaintiff being closely associated with Keith Arakaki who had a pending EEO Complaint")).

Both Tomooka and Hirai deny having any knowledge of any participation by Plaintiff in Arakaki's EEO complaint process until after acts 1–4

---

[9]  In order to survive summary judgment, the circumstantial evidence offered by the plaintiff "must be both *specific* and *substantial* to overcome the legitimate reasons put forth by [the defendant]."  *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

occurred.  *See* ECF No. 45-7 at PageID.233 (Tomooka's Deposition; "Q: when did

you first become aware that Drake Nohara was either going to be a witness in the

case or assist Mr. Arakaki with his EEO matters?  A: During Drake Nohara's

redress . . . . May 2017."); *id*. at PageID.235 (Tomooka stating that "Drake Nohara

did not tell me he felt retaliated against for any prior EEO activity until we had the

[May 2017] redress meeting . . . . Nor did he tell me that he felt there was a hostile

work environment at any point"); ECF No. 45-1 at PageID.160 (stating, in Hirai's

Declaration, that "I learned during the EEO process for Nohara's complaint against

me that he thought he was being retaliated against because he participated in the

complaint filed by Keith Arakaki.  I did not understand this, because I did not even

know he was involved in that complaint."); ECF No. 45-6 at PageID.213 (stating,

in Hirai's EEO Investigative Affidavit, that he was unaware that Plaintiff was

involved in any EEO activity prior to March 3, 2017, to include filing a charge,

testifying, assisting another, or participating in a discrimination proceeding).

        In response, Plaintiff fails to present evidence to show otherwise.  At

best, Plaintiff offers Arakaki's deposition testimony in which he states that

Plaintiff "might have gave [sic] me guidance" in relation to his EEO complaint and

that Tomooka "probably had some somewhat [sic] knowledge of it.  I would think

so."  ECF No. 50-2 at PageID.389.  And Plaintiff also cites to Hanchett's

deposition testimony, in which she states that Hirai would use Tomooka "to do his

dirty work" and they "were in cahoots."  ECF No. 50-3 at PageID.435.  Short of

these conclusory and speculative statements, Plaintiff offers no evidence—direct or

circumstantial—that Defendants were aware that Plaintiff assisted or was affiliated

with Arakaki in his EEO complaint.  And "[c]onclusory, speculative testimony in

affidavits and moving papers is insufficient to raise genuine issues of fact and

defeat summary judgment."  *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984

(9th Cir. 2007); *see also Hernandez v. Spacelabs Medical, Inc*., 343 F.3d 1107,

1112 (9th Cir. 2003).

> As is obvious, if Tomooka and Hirai had no knowledge of Nohara's

support of Arakaki in his EEO process, then they could not have retaliated against

him for any assistance that he may have offered to Arakaki.  In other words, there

is no causal link between acts 1–4 and Plaintiff's involvement in any protected

activity.  Because Nohara has failed to establish the third prong of a prima facie

case as to these acts, the court GRANTS Defendants' Motion as to acts 1–4.

> ## 2.    *Acts 5, 6, and 7*

> Tomooka and Hirai were certainly aware that Plaintiff filed an EEO

complaint on March 3, 2017.  And Nohara's filing of his own EEO complaint—as

opposed to supporting the filing of another's (Arakaki's) EEO complaint—became

the protected activity against which Tomooka and Hirai allegedly retaliated.  The

court thus addresses alleged acts 5–7.

16

*a. Act 5*

On March 13, 2017—just ten days after Nohara engaged in the protected activity of filing his EEO complaint—Tomooka issued him a "Letter of Instruction." This Letter of Instruction sets forth a litany of complaints regarding Nohara's work performance and threatens "further action" absent improvement. ECF No. 45-15 at PageID.336–339. Because the letter was issued so soon after Nohara's EEO complaint was filed, causation may be inferred. *See Miller*, 797 F.2d at 731 ("Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge.").[10] Accordingly, Plaintiff has established a prima facie case of act 5 being retaliatory and has shifted the burden to Defendants under *McDonnell Douglas*.

Tomooka argues she had non-retaliatory and "legitimate reasons" for issuing the letter. ECF No. 44-1 at PageID.137. She states in her declaration that the "letter of instruction . . .was necessary because Nohara was not timely producing reports, and he was not communicating well. [She] felt like he needed a list of action items on improvements." ECF No. 45-2 at PageID.167. And that

---

[10] Defendants' Motion does not address the second prima facie element of retaliation for acts 5 and 7—that is, whether under the *Burlington* standard, each act was materially adverse and likely to dissuade a reasonable worker from engaging in protected activity. The court will not analyze this element when Defendants have failed to do so, and thus assumes, for purposes of this Order, that the second element of the prima facie case has been met as to these two acts.

"she rescinded it once his performance improved." ECF No. 44-1 at PageID.137–138.

In turn, however, Nohara has presented sufficient evidence of pretext to survive summary judgment. Nohara states in a declaration that Tomooka had assigned him certain tasks, such as working on Vulnerability Risk Assessment Tool ("VRAT") surveys and then, through Hirai, removed his ePACS access, which prevented him from doing this work and then issuing him the Letter of Instruction, requiring improvement for work she impeded in the first instance. ECF No. 50-6 at PageID.482. He states that Tomooka's "allegation that [he] was not updating her is not accurate as [he] included her on [his] emails to the inspection service." *Id*. What's more, Nohara also states that Tomooka "only gave Letters in such a format to Roslyn Hanchett, Joni Price, and me. We are the 3 individuals who filed recently EEO complaints against her." *Id*. And Tomooka confirmed that she gave these employees—who were all engaged in protected EEO activity—Letters of Instruction. ECF No. 45-7 at PageID.271. Because Plaintiff has created a genuine issue of material fact as to whether Tomooka's proffered reason for issuing the Letter of Instruction is pretextual, the court DENIES Defendants' Motion as to act 5.

### b. *Act 6*

Nohara claims that Tomooka "disenrolled [him] from attending the

July 19, 2017" Maintenance Operations Support ("MOS") National Center for

Employee Development ("NCED") training.  But there is simply no evidence in

the summary judgment record to support this assertion.[11]  Tomooka explains:

> I did not deny Nohara access to the MOS NCED training
> course.  There was no such class scheduled at NCED
> during the time frame he claims I denied him.  No other
> employees under my supervision attended that class at
> the time he states he was denied.

ECF No. 45-2 at PageID.167.  And the specific evidence cited by Plaintiff in his

CSF to support this act does not even relate to the MOS NCED training.  *See* ECF

No. 50 at PageID.373 (Plaintiff's CSF at ¶ 22).  In short, Nohara has failed to show

that he was denied or disenrolled from this training, and thus, he fails to meet his

prima facie case.  Accordingly, the court GRANTS Defendants' Motion as to act 6.

### c. *Act 7*

Nohara claims that Tomooka denied him attendance at an eWHEP

training on July 25, 2017.  *Id*. at PageID.373–374 (Plaintiff's CSF at ¶ 23).  And

again, due to temporal proximity, there is sufficient evidence that this alleged act is

---

[11]  Although Plaintiff's CSF claims he was disenrolled from the course that was
scheduled for July 19, 2017, his Complaint states that a July 19, 2017 request to attend the
training was denied.  *Compare* ECF No. 50 at PageID.373 (Plaintiff's CSF at ¶ 22), *with* ECF
No. 1 at PageID.4.  Regardless, the exact nature of the allegation is not relevant to the court's
ultimate conclusion.

casually linked to Nohara's March, 2017 EEO complaint filing.  *See e.g.*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (four-month period between protected activity and layoff sufficiently close to show "causal link"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (three-month period sufficient to infer causation).  Accordingly, Nohara has made out a prima facie case for retaliation as to act 7.[12]

Tomooka, however, offers a legitimate reason for denying Nohara attendance to the eWHEP training.  In her declaration, Tomooka claims that she "selected another employee over Nohara to attend an eWHEP training because Nohara's job did not require it, while the other person's job did."  ECF No. 45-2 at PageID.168.  Although this claim is sufficient to provide a legitimate reason for denying Nohara attendance at this training, Tomooka does not explain in any detail whatsoever as to why Nohara's job did not require this training, and why another person's job did.  In determining whether this statement is pretext, the court considers the limited nature of the explanation provided by Tomooka.

But Nohara has offered sufficient evidence of pretext to survive summary judgment as to this act.  According to Tomooka's March 13, 2017 Letter of Instruction, much of Nohara's job duties indeed required estimating and

---

[12]  Again, Defendants' Motion does not address the second prima facie element for act 7 and the court thus assumes, for purposes of this Order, that the second element of the prima facie case has been met as to act 7.

correcting the workhours of employees he supervised—tasks that the eWHEP training appear to support. *See* ECF No. 45-15 at PageID.336–337 ("Operational Engagement" section requiring Nohara to "correct daily clock rings" in employee timesheet submissions and the "Functional Administration" section requiring Nohara to complete "EWP administration tasks"). Because Plaintiff has created a genuine issue of material fact as to whether Tomooka's proffered reason for denying the eWHEP training is pretextual, the court DENIES Defendants' Motion as to Act 7.

### 3. *Hostile Work Environment Claim*

Only two of Plaintiff's seven alleged acts of retaliation survive summary judgment, and these two discrete acts of retaliation are insufficient to rise to the level of a hostile work environment. These two acts of retaliation were not "sufficiently severe or pervasive to alter the conditions of employment," as required to establish the second prong of a hostile work environment prima facie case. *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020). And while even a single act of harassment can create a hostile work environment, neither retaliatory acts—nor both combined—were "extremely severe" in nature to constitute a hostile work environment. *Fried*, 18 F.4th at 648. Accordingly,

Nohara has failed to establish a prima facie case for a hostile work environment. The court GRANTS Defendants' Motion as to this claim.[13]

## V. <u>CONCLUSION</u>

For the reasons set forth above, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment, ECF No. 44. Specifically, the court DENIES Defendants' Motion as to Plaintiff's retaliation claims regarding acts 5 and 7. The court GRANTS Defendants' Motion as to acts 1, 2, 3, 4, and 6, as well as the hostile work environment claim.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 2, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Nohara v. DeJoy et al.*, Civ. No. 21-00553 JMS-RT, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, ECF No. 44

---

[13]   During the May 15, 2023 hearing, Plaintiff's counsel conceded that if only acts 5 and 7 survive summary judgment, the hostile work environment claim necessarily fails.